The opinion of the Court was delivered by
Johnston, Ch.
Robert Gillam died in 1814, leaving his wife, Elizabeth, and three children, to wit: William, James and Sarah. Sarah had been married to Philemon Berry Waters ; who died in 1807, and by whom she had three children, Robert, Philemon and Mary B. After the death of her husband, Philemon Berry Waters, Sarah had become the wife of William Sheppard,
In the will of Robert Gillam, executed the 27th of October) 1813, the following dispositions occur, among others not necessary to notice:
*84 “ I also give unto my said beloved wife,” (Elizabeth,) “ a negro fellow, named Tom, and a wench, named Linn,- and her child,” &c., “during her natural life : and at her death, to be sold, together with their increase, (if any,) and equally divided between my two sons, William and James, or their heirs, and the surviving children of Philemon Berry Waters, deceased.
“ I also give to my daughter, Sarah Sheppard, in addition to what I have already given her,- twenty dollars.”
This trifling sum is all that is given to Sarah Sheppard in any part of the will: so that the gifts of the testator to her, to which he alludes, must have been made anterior to the will.
Elizabeth, the widow of the testator, died in 1851, at a very advanced age, about ninety years : and the executor, in pursuance of the directions of the will, took possession of the slaves, with their increase, and sold them, and now holds the proceeds.
It is stated in the pleadings, and agreed on, that Philemon Berry Waters never had any other children than the three above named: all of whom were alive at his death, and at the death of the testator, Robert Gillam.
But between the death of the testator and the falling in of the life estate, the two sons, Robert and Philemon Waters had died, leaving (either one or both) issue. The daughter, Mary B. (now the wife of Phillip Schoppert,) alone survived.
Her bill is brought to adjust her interests in the proceeds of the slaves sold by the executor; and to have a settlement made on her. And for these purposes her husband is made a defendant, together with the executor and the heirs of her deceased brothers, &c. All parties in interest are before the Court.
By the decree of the Circuit Court, it was adjudged that she, as sole surviving child of Philemon Berry Waters, was entitled, in exclusion of the children of her brothers Robert and Philemon ; and that the fund should be divided equally between herself, William Gillam and James Gillam, each faking one-third ; and that her third should be settled as prayed.
This is an appeal by the children of the plaintiff’s two brothers ; in which they contend that in the construction of the testa *85 tor’s will, the three children of Philemon Berry Waters, who were all living at his (testator’s) death, should have been held to have taken a vested remainder in the slaves, limited upon the death of Elizabeth Gillam ; and that the share of each of those who had died during her life, should have been distributed to his children.
On examination of the words of the will, it is the unanimous opinion of this Court, that the construction put upon them by the Chancellor, on circuit, was correct.
What might have been the effect of the will as to the survi-vorship among the children of Philemon Berry Waters if it had been stated and shewn that he had had other children in his lifetime, and that the three named in the pleadings were the only ones who survived him, it is not necessary to consider. My opinion is, rather, that on proof of such a state of the family, the testator would have been held to have referred to it, and that the three children surviving him (Waters) would have been adjudged to have taken vested interests, as ascertained persons, under the will. If so, their interests would have been transmissible, and the children of Robert and Philemon would have taken their parent’s share.
Parol proof may always be received of the circumstances by which a testator is surrounded at the time he attests his will; and those circumstances will always be allowed an influence in the interpretation of dubious words or phrases in it; though they cannot be resorted to to prove the testator’s intention, apart from his language.(a)
It is a pretty obvious inference from this doctrine, that, as surrounding circumstances may be resorted to for the construction oí a testamentary paper, the same words or phrases, occurring in different wills, will receive different interpretations, ac. cording to the diversity of circumstances under which the several testators composed their testaments.
It is probable, therefore, that if Philemon Berry Waters had *86 been shewn to have had a larger number of children than the three whom he left behind him, the testator would have been held to have spoken of these three as his surviving children, meaning thereby to speak not of a survivorship among these children, but of their being survivors of their father.
But it was admitted and agreed on at the hearing, and has been again admitted and insisted on here on the argument of this appeal, that Robert, Philemon and Mary were the only children the father ever had: and, therefore, there is no room left for the interpretation to which I have referred.
There are but two other modes suggested, of construing the words surviving children of Philemon Berry Waters : to construe them as meaning such of the children as survived the testator; or as meaning such of them as survived the life tenant, and were in esse to take at the period of distribution.
The case of Cripps vs. Woolcott,(a) would seem to decide this point, generally. It is held in that case that words of sur-vivorship are to be referred to the period of division and enjoyment, unless the contrary intent be especially shewn.
There is nothing in the will in this case to shew an intention at variance with the rule that the survivorship relates to the period of distribution. On the contrary, there is much on the face of the will to help the rule.
It seems plain from the testator’s language that he looked to changes to take place, during the life estate, both as to the property and as to the persons to whom it was to go in remainder. As to the former, it may be observed that the increase of the property is taken into consideration by the testator. This may be admitted to be but a very slight¿circumstance. But the expressions in relation to a change in the persons to take in remainder are far from being slight or unimportant. The testator directs the division to be made equally between his two sons, William and James, or their heirs, and the surviving children of Philemon Berry Waters, deceased. Here it seems plain that he contemplated the possibility of the death of his two *87 sons ; .and that he intended to provide for it by declaring that their interests should be transmitted to their heirs. Is it not fair to presume that the testator had in view the possible death of Waters’ children, and employed the term surviving in reference to that event ? If he intended that their shares should be transmissible, like those of his sons, why did he not direct, as in the case of his sons, that their heirs should take in their place ¡ Taking the whole clause together, it seems pretty clear, that bn the death of the sons during the life-estate their interests should be transmitted to their heirs, and, on the death of any of the children of Waters, his or her interests should be transmitted hot to his or her heirs, but to such of the other children as should survive the life-tenant.
There are other reasons for this construction to be gathered from the will. The mother of these children had married a second husband. It appears by the will that the testator gave her but twenty dollars. Whether he conceived that he had already fully provided for her, or was displeased with her second marriage, or whatever may have been his motive, it seems not unreasonable to conclude that he intended the provision made by him for the children of her first marriage to enure exclusively to their'advantage, and not to her or her second family.
The children of Waters were of very tender age, and he may have supposed it improbable that his widow (on whose life he suspended their interests,) already an old woman, should live to the advanced period to which her life was protracted : or that the infant children of Waters would, during her life, have families or children of their own, to take in case of their death. His probable conclusion was that the best means of saving any portion of their interests from going over to the Sheppards was to limit it to the survivors among themselves, at the death of his widow.
It is ordered that the decree be affirmed and the appeal dismissed.
Dunkin, Dargan and Wardlaw, CC., concurred.

Appeal Dismissed.

 Rosborough vs Hemphill, 6 Rich. Eq. 95.

( 4 Madd. 11, and see Deveaux vs. Deveaux, 1 Strob. Eq. 287-8.